# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **CASEY B. WATKINS,** Defendant. | **Case No: 17-3126-05-CR-S-MDH** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and Josephine L. Stockard, Assistant United States Attorney, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on July 22, 2021. For the reasons set forth below, the Government recommends that this Court sentence the defendant to a total term of incarceration of 103 months and five years of supervised release.

### I. BACKGROUND

On March 18, 2019, the defendant, Casey Watkins, pleaded guilty before the Court to the single count of the Superseding Information. On June 5, 2019, the final Presentence Investigation Report (PSR, Doc. 130) was filed.

### II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated, advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th

Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930.

### III. DISCUSSION

#### A. Statutory and Guidelines Calculations

*PSR Calculations*

The PSR finds a Guidelines imprisonment range of 110 to 137 months. (PSR ¶ 24.) Pursuant to the plea agreement, the Government believes the appropriate Guidelines range is 92 to 115 months.

#### B. Statutory Sentencing Factors

This Court must "impose a sentence sufficient, but not greater than necessary" to address the factors enumerated in 18 U.S.C. § 3553, including the Guidelines issued by the U.S. Sentencing Commission. The Government has considered all the 3553 factors.

After some minor drug offenses at the age of 17 and 18, the defendant began her documented victimization of the community when she passed a fake $100 bill for a candy bar, and presumably the change from the bill, in 2004. (PSR ¶ 36.) On May 22, 2005, she passed a forged check at Foot Locker and attempted to pass another at the Buckle. (PSR ¶ 37.) In November 2005, she and someone else went to Wal-Mart, switched the tags on items they wanted to buy with clearance tags and then still paid for those items with a forged check. (PSR ¶ 38.) In December 2005, she used a forged check to buy a tanning package. (PSR ¶ 39.) Those crimes were all charged and on July 12, 2006, she pleaded guilty and was granted probation. (PSR ¶¶ 36-39.)

Shortly before she was granted probation, she possessed a stolen Kia. (PSR ¶ 40.) Just over a week after she was granted probation, she passed a bad check at a gas station. (PSR ¶ 41.) On November 8, 2006, she was driving with no insurance and no proof of vehicle registration. (PSR ¶ 42.) While still on probation, on May 2, 2007, she and her boyfriend stole a computer from Rent-A-Canter. (PSR ¶ 44.) On July 18, 2007, she was driving without a license. (PSR ¶ 43.) On September 24, 2007, she and her boyfriend stole some wrenches from a store at the mall and nearly ran over a loss prevention employee who tried to stop them. (PSR ¶ 45.) On September 30, 2007, the defendant used a stolen credit card to buy groceries. (PSR ¶ 47.) On October 14, 2017, the defendant used a stolen credit card to buy Wal-Mart gift cards. (PSR ¶ 48.) On November 9, 2007, she forged a check and cashed it at Great Southern and then attempted to cash another check that had been reported stolen. (PSR ¶ 46.) On January 18, 2008, she stole a credit card. (PSR ¶ 49.) That same day, she stole a car. (PSR ¶ 50.)

On March 12, 2008, her probation was revoked. (PSR ¶¶ 36-40.) On August 8, 2008, and September 8, 2008, she added seven additional felony convictions to her record based on her activities above while on probation and was sentenced to prison in those cases as well. (PSR ¶¶ 44-50.) She was paroled on March 28, 2012. (PSR ¶¶ 44-48.)

On November 30, 2012, she damaged a truck and stole money and a brief case in smash and grab thefts from vehicles. (PSR ¶ 53.) On January 18, 2013, she smashed in a vehicle. (PSR ¶ 52.) On January 22, 2013, she appears to have broken into a vehicle and stolen a credit card and a USB drive. (PSR ¶ 51.) When officers went to contact her, she had a stolen vehicle at her residence and in it were other items from smash and grab thefts from vehicles. (PSR ¶ 51.)

On April 23, 2013, her parole was revoked. (PSR ¶¶ 36-39, 44-48.) She added three additional felony convictions to her record on January 10, 2014, based on her activity above. (PSR

3

¶¶ 51-53.)  At a time when she appears to have been in prison, the defendant still managed to steal money from someone by representing that she needed the money to enroll in a class called "Life After Release."  (PSR ¶ 54.)

On April 28, 2017, she was released on parole again.  (PSR ¶¶ 51-53.)  On September 28, 2017, the defendant and William Jones discussed a firearm.  (PSR ¶ 7.)  On September 30, 2017, she and Jones discussed drugs and the defendant stated she was "almost out" and had "not even fifty-six left."  (PSR ¶ 8.)  When the drugs Jones purchased in Kansas City were seized on October 15, 2017, he had the defendant come meet him in Kansas City.  (PSR ¶ 14.)

After that, on October 25, 2017, she was visiting an inmate and had methamphetamine, alprazolam, and a methamphetamine smoking pipe.  (PSR ¶ 55.)  On January 10, 2018, she was convicted based on those offenses and found herself back in prison, from where she was brought to federal court on May 30, 2018, and into federal custody.

The defendant has requested that she receive a reduction in her sentence for time she has spent in custody on the writ.  The Government objects to this. The current sentence the defendant is serving is based on the events of October 25, 2017, and other past offenses, which are not related to this conspiracy.  Her federal sentence should not run concurrent to her state sentence, nor should she receive any reduction for the time she was in federal custody on the writ.

In her sentencing memo and her allocution statement, the defendant has asked for another chance.  However, the defendant, who is now 35 years old, has had numerous chances to change her life.  She was originally granted probation after being convicted of four felonies.  She made it less than two years on probation and even less time before she committed another crime.  After being released on parole the first time, she made it only eight months before she was back into crime.  After her next release on parole, she connected with Jones and other people and got

4

involved in drug distribution. Even after the drugs Jones obtained were taken off by law enforcement in October 2017, the defendant determined that going to a prison with drugs was still something she should do.

During the time the defendant was involved in this drug conspiracy, she was clearly obtaining fairly large amounts of drugs if 56 grams was "almost out" and was living deep into this life where she was discussing a firearm with someone else when neither of them should have been in possession of a firearm. The defendant was living in the world where drugs and guns were commonplace and tools of the trade she had chosen. The defendant's connections to Jones in this case cannot be overlooked. Whether or not the defendant was involved in the large transaction that Jones completed in October 2017, she was involved with drugs and with him and he was very much a person in the world outside the law.

The defendant has demonstrated over and over again that she cares little about authority and rules, but just as much that she cares very little for others. The defendant has committed crimes over and over again with victims. Anyone who has struggled to get a handle on a stolen checkbook or credit card, or deal with a broken into car can recount that it not only requires a large expenditure of time and resources , but also that it leaves them jarred about their own security and the security of the community.

When the defendant decided to immerse herself completely in the world outside the law and start dealing drugs and talking guns with a high ranking member of a prison gang, she made a choice that was not acknowledging her past mistakes and realizing she needed to move forward. It was always more of the same, which was deeper and deeper into the darkness. And as she was making these choices, she had resources to change, court orders that required change, and conditions that demanded change. The defendant has never shown that she is amenable to either

5

supervision or authority both in ways large and small. The PSR outlines numerous violations both while on supervision and in prison and the repetition of her criminal history is a clear pattern. (PSR ¶¶ 56 & 57.)

The defendant and her attorney both assert that drugs are the root of her problem and there is no doubt that is true. But surely the defendant has always known that to be true. She completed drug treatment in the Missouri Department of Corrections in 2012. (PSR ¶ 100.) While she has not been in custody, she has had a probation or parole officer basically her entire adult life. While her desire to change now may be sincere, the past demonstrates that she is a danger, that only prison deters her, and that she has very little respect for the law. In the past, she has not used the tools she learned in treatment, nor raised her hand to acknowledge she was someone who needed help. And by not doing that, she became someone who victimized and endangered others.

The defendant had a sad childhood and has a sad and tragic history when it comes to drug use. (PSR ¶¶ 92 & 99.) She has completed her GED, about which she should be proud, and has some ideas for herself about a future career. The United States would support her inclusion in the 500 hour drug treatment program, any appropriate mental health treatment, and any other training that could help her achieve her career goals both as a part of her prison sentence and as conditions of her eventual release.

### IV. CONCLUSION

Section 3553 requires this Court to impose a sentence that considers the factors above, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to deter criminal conduct, the need to protect the public from the defendant, and any other statutory sentencing

factors be considered in reaching an appropriate sentence. The Government respectfully requests that this Court impose a sentence of 103 months' imprisonment.

                                                Respectfully submitted,

                                                TERESA A. MOORE
                                                Acting United States Attorney

                                                */s/ Josephine L. Stockard*
                                                JOSEPHINE L. STOCKARD, Mo. Bar #63956
                                                Assistant United States Attorney
                                                Western District of Missouri
                                                901 St. Louis Street, Suite 500
                                                Springfield, Missouri 65806
                                                (417) 831-4406

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 15th day of July 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

                                                */s/ Josephine L. Stockard*
                                                JOSEPHINE L. STOCKARD